IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAMUEL L. MCCRARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV428 |
| | ) | |
| DETECTIVE B. BENFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On March 20, 2025, in Rowan County Superior Court, Samuel L. McCrary pled guilty to indecent liberties with a child and intimidating a witness. Ten months earlier, though, he brought this related action against Detective B. Benfield of the Rowan County Sheriff's Office challenging his arrest, the charges against him, his high secured bond, and his treatment in the Rowan County Detention Center ("RCDC").

McCrary alleges that Benfield unlawfully arrested him, used his power to manipulate magistrates to impose excessive bonds and charges, and ordered officers at the RCDC to place McCrary on suicide watch in a dry cell with no access to water for seven days. *See* Compl. § II.D., Docket Entry 2.

Benfield has moved for summary judgment and submitted his sworn Affidavit in support. Docket Entries

22, 23, 23-1, 26. McCrary responded, but only with a brief arguing in support of his claims. Docket Entry 25. Accordingly, the undisputed evidence before the Court shows that Benfield is entitled to judgment as a matter of law. The Court should grant his motion and dismiss this action.

### I. UNDISPUTED FACTS

In early May 2023, McCrary's wife reported to an officer that McCrary had been sexually molesting her fourteen-year-old daughter ("minor"), who then advised Benfield. Aff. Detective B.C. Benfield ¶ 2 (Nov. 19, 2025), Docket Entry 23-1. Benfield immediately began investigating. *Id.*

As part of his investigation, he contacted McCrary's wife. *Id.* ¶ 3. She told Benfield that McCrary did not have a valid driver's license but sometimes drove anyway, particularly to a restaurant on Thursdays for

dinner. *Id.* Benfield found her reliable, so he passed this information to the patrol unit. *Id.* That was the extent of Benfield's participation in the events leading to McCrary's May 5, 2023 traffic stop and arrest for driving with a revoked license. *Id.* ¶ 4. And he had no role in the Magistrate's decision to impose bond on McCrary. *Id.*

Benfield continued the sexual assault investigation. *Id.* ¶ 5. In addition to interviewing McCrary's wife, he interviewed the minor more than once, and she told Benfield that McCrary touched her genitalia in a sexual manner on multiple occasions over a period of years. *Id.* Benfield credited her account. *Id.*

On May 18, Benfield went to the Terrie Hess Child Advocacy Center and watched a forensic interview of the minor. *Id.* ¶ 6. The information she provided was consistent with what she had told Benfield. *Id.* She reported that McCrary had inappropriately touched her private parts more than once and almost every other night. *Id.*

Benfield then reviewed text messages McCrary had sent to the minor. *Id.* ¶ 7. Some messages were cryptic, while others seemed to request or pressure the minor to do something for McCrary. *Id.* ¶¶ 7, 8 (describing two messages as examples). In addition to the text messages, Benfield reviewed videos on the minor's cellphone which he believed corroborated the minor's statement about McCrary making sexual

advances to her. *Id.* ¶¶ 9, 10 (describing statements in two videos as examples).

Based on the evidence he discovered during his investigation, Benfield determined there was probable cause to believe that McCrary had committed acts of indecent liberties with a child and child abuse. *Id.* ¶¶ 1, 12. On July 20, 2023, he presented the evidence to a magistrate. *Id.* ¶ 12. The magistrate found probable cause and issued an arrest warrant for McCrary charging him with eight counts of indecent liberties with a child and one count of felony child abuse. *Id.*

That same day, a deputy arrested McCrary who was at the courthouse on another matter. *Id.* ¶ 13. Benfield was present for the arrest but did not accompany McCrary and the deputy any further and had nothing to do with the bond that the magistrate set. *Id.*

The following day, July 21, Benfield received a text message from McCrary's wife expressing concern over comments he made to her daughter that he would harm himself if he went back to jail. *Id.* ¶ 14. Finding her statements credible, Benfield reported this to the jail, as was his duty. *Id.* That was the extent of his involvement with this information. He did not order or direct the RCDC officers to do anything. *Id.*

In February 2024, Benfield learned that McCrary had contacted his wife.

*Id.* ¶ 15. She brought Benfield two letters McCrary had just sent her, the contents of which Benfield believed constituted witness intimidation. *Id.* ¶¶ 16, 17 (quoting from the letters). After confirming this with the Assistant District Attorney, Benfield presented the evidence to a magistrate who found probable cause and issued a warrant charging McCrary with witness intimidation. *Id.* ¶ 17. A deputy served the warrant on McCrary while he was in jail. *Id.*

In May 2024, McCrary filed the instant action against Benfield. He alleges, pursuant to 42 U.S.C. § 1983, that Benfield subjected him to unlawful arrest and cruel and unusual punishment. *See generally* Compl. More specifically, McCrary contends that Benfield requested deputies arrest him on May 5, 2023 for driving without a license so that Benfield "could carry out further plans to keep [him] in custody" and "charge [him] with false allegations." *Id.* According to McCrary, he was "[t]aken to magistrates and placed under secure bond due to orders from B. Benfield." *Id.* He alleges that Benfield again arrested him in July "for false allegations" and placed him into suicide watch custody from July 21 through July 28, 2023 during which several officers denied him access to water. *Id.* But McCrary provided neither evidence of these accusations in response to Benfield's motion for summary judgment nor a verified complaint.

On March 20, 2025, McCrary pled guilty to indecent liberties with a child

and intimidating a witness. Aff. Benfield ¶ 18. The court sentenced him to twenty-seven to forty-two months' imprisonment. *Id.*

Because the undisputed evidence shows that Benfield did not violate McCrary's rights as he alleges, the Court should grant Benfield's motion for summary judgment and dismiss this action.

## II.   STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023). The moving party bears the burden of establishing the absence of a genuine dispute of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986) (quoting Rule 56).

"An affidavit or declaration used to support [summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)). "'As a general rule, . . . the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion.'" *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting *Williams*, 952 F.2d at 823). However, a verified complaint "'is the equivalent of an affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" *Id.* (quoting *Williams*, 952 F.2d at 823).

The non-moving party "cannot rest on unsupported statements in his brief to create a genuine dispute of fact," *Vaden v. Enochs*, No. 7:21CV155, 2022 WL 520804, at *4 (W.D. Va. Feb. 22, 2022).

## III. DISCUSSION

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A plaintiff bringing suit pursuant to Section 1983 must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, McCrary alleges Benfield violated his rights to be free from unlawful arrest and cruel and unusual punishment, but provides no evidence to support those allegations in response to Benfield's motion for summary judgment.

Benfield asserts that he is entitled judgment as a matter of law and to qualified immunity. The undersigned recommends the Court find the same.

    A. Benfield is entitled to summary judgment on the unlawful arrest claim.

McCrary challenges the legality of his arrests on May 5, 2023 during the traffic stop and on July 20, 2023 at the courthouse and the resulting pretrial detention. And he alleges Benfield is at the heart of each of those unlawful actions.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." Not only does that protection apply to arrests, but it also applies to detention pending trial. *See Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017).

"To establish an unreasonable seizure under the Fourth Amendment, [the plaintiff] needs to show that the officers decided to arrest [him] . . . without probable cause." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). However, "[w]hen a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983." *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991). "Generally speaking, a police officer may rely on a magistrate's determination that probable cause exists for an arrest." *Swick v. Wilde*, No. 1:10-cv-303, 2012 WL 3780350, at *7 (M.D.N.C. Aug. 31, 2012) (citing *Torchinsky*). Of course, "when . . . a judge's probable-cause determination is predicated solely on a police officer's false statements," "[t]hen . . . a person is confined without constitutionally adequate justification." *Manuel*, 580 U.S. at 367.

Benfield presents undisputed evidence, by way of his affidavit, that the extent of his involvement in McCrary's May 5, 2023 arrest was relaying to a patrol officer information about his driving without a license on Thursdays to dinner. He did not order or participate in the arrest nor was he present for the arrest. Likewise, he was not involved whatsoever in the magistrate's bond determination or McCrary's detention stemming from that arrest. For § 1983 liability to attach, a defendant must have personally acted in the alleged violation of rights. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (affirming dismissal of claim where the plaintiff failed to allege the defendant's personal involvement). Because the undisputed evidence shows that Benfield was not personally involved in the May 5, 2023 arrest and related bond determination and detention, McCrary's claim related to this arrest fails.

As for McCrary's July 20, 2023 arrest for indecent liberties with a child and felony child abuse, Benfield's undisputed evidence again shows that he did not unlawfully arrest or detain McCrary. Benfield presented evidence of those crimes to a magistrate who determined there was probable cause to charge McCrary with and arrest him for the offenses. Therefore, McCrary's arrest on the warrant was reasonable.

Furthermore, the undisputed evidence supports the magistrate's finding of probable cause. *See* N.C. Gen. Stat. § 14-202.1(a) (providing elements of the crime of taking indecent liberties with a minor). Benfield conducted a months' long investigation involving interviews with the minor's mother, multiple interviews with the minor, observation of the minor's forensic interview, and a review of text messages and videos between the minor and McCrary. Each piece of evidence corroborated the allegations. Nothing before the Court shows that Benfield did anything

5

other than present the evidence as he knew it to the magistrate. McCrary's arrest on a warrant procured with probable cause forecloses his claim for this arrest.

Furthermore, not only did the magistrate determine there was probable cause to believe McCrary had committed indecent liberties with a minor, but McCrary ultimately pled guilty to the crime. And under applicable North Carolina law, McCrary's guilty plea to indecent liberties with a minor "establish[es] that [there was] probable cause to arrest [him] for [the] offense[]." *Humphreys v. Rowan-Salisbury Bd. of Educ.*, No. 1:21-cv-432, 2023 WL 2692433, at *6 (M.D.N.C. Mar. 29, 2023). Accordingly, McCrary's claim for unlawful seizure related to his arrest on these charges fails.

The same is true for McCrary's February 2024 arrest for witness intimidation, to the extent he challenges its propriety. The undisputed evidence shows that Benfield read the letters that McCrary sent his wife and believed that at least the most recent letter constituted witness intimidation. He first took the evidence to an Assistant District Attorney who agreed that there was probable cause to believe McCrary had attempted to intimidate a witness. As he had before, Benfield then presented the evidence to a magistrate who found probable cause to charge McCrary with witness intimidation and issue a warrant for his arrest. McCrary's arrest on a warrant secured by probable cause is the antithesis to unlawful seizure.

And McCrary pled guilty to this charge, which, as previously noted, establishes that probable cause supported his arrest. *See Humphreys*, 2023 WL 2692433, at *6.

B. Benfield is entitled to summary judgment on the cruel and unusual punishment claim.

McCrary contends that Benfield subjected him to cruel and unusual punishment when he ordered McCrary's placement on suicide watch in a dry cell without access to water for seven days in July 2023.

As the Supreme Court recognized decades ago, "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (internal quotation omitted) (alterations in original). "[T]he Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37.

Assuming that McCrary was placed in a cell without access to water for seven

6

days, the undisputed evidence is that Benfield did not place McCrary in those conditions or direct or order anyone else to do so. Instead, Benfield received information from McCrary's wife that he had threatened to harm himself. Pursuant to the Rowan County Sheriff's Office policy, Benfield reported this information to the RCDC staff. He had nothing to do with the conditions of McCrary's detention. Without his personal involvement, Benfield cannot be liable pursuant to § 1983. *See Wilcox*, 877 F.3d at 170. Accordingly, McCrary's claim of cruel and unusual punishment fails as a matter of law.

C. Because there is no constitutional violation, Benfield is entitled to qualified immunity.

Qualified immunity protects government officials from § 1983 suits "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Ruffin v. Davis*, 174 F.4th 414, 418 (4th Cir. 2026). Thus, there are two prongs of the qualified immunity analysis: whether a statutory or constitutional violation has occurred and, if so, whether the right was clearly established at the time of the violation. *See Harrold v. Hagen*, 174 F.4th 393, 401-02 (4th Cir. 2026). "If the answer to either question is 'no,' the officer being sued is entitled to qualified immunity." *Id.* at 402 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Here, as explained above, the undisputed evidence shows that Benfield did not violate McCrary's constitutional rights. Therefore, Benfield is entitled to qualified immunity.

IV. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** Detective B. Benfield's Motion for Summary Judgment and dismiss the case with prejudice.

This the 29th day of June, 2026.

_____
JoAnna Gibson McFadden
United States Magistrate Judge

7